UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NICHOLE CEYROLLES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: |
| v. ) | |
| ) | 2:23-cv-193-RWS |
| CITY OF HELEN, GEORGIA, ) | |
| MICHAEL DAY, ) | |
| GRAYLON BRYSON, ) | |
| ) | |
| Defendants. ) | |

**JOINT PRELIMINARY REPORT AND DISCOVERY PLAN**

**1.    Description of Case:**

(a)    Describe briefly the nature of this action.

Plaintiff's lawsuit arises under 42 U.S.C. § 1983. Plaintiff alleges that Officers Day and Bryson violated the First and Fourth Amendments and that they acted pursuant to an unconstitutional official policy of the City of Helen that permits officers to arrest individuals for using profanity in public.

(b)    Summarize, in the space provided below, the facts of this case. The summary should not be argumentative nor recite evidence.

**Plaintiff:**

On September 20, 2021, Nichole Ceyrolles was with friends in the City of Helen, Georgia. Ms. Ceyrolles and her friends were staying at the River Bend Motel and Cabins located at 134 River Street in Helen, Georgia. At or about

midnight on the morning of September 20, 2021, City of Helen Officers Michael Day and Graylon Bryson were dispatched to the River Bend Motel to respond to a noise complaint. After the officers arrived, they did not find anyone in the parking lot of the hotel causing a noise disturbance; instead, they only found a man and woman standing in the lot. The woman in the parking lot was Ms. Yunuen Rivera who was one of the friends with whom Plaintiff was staying at the hotel.

Officers Day and Bryson approached Ms. Rivera and her male companion and explained that they were responding to a noise complaint. Ms. Rivera explained that they had not been causing any noise. The officers then asked Ms. Rivera to provide her identification. The sole basis for that request was that Ms. Rivera was in the vicinity of a previous noise complaint. Ms. Rivera initially declined to provide her name to the officers and explained that her identification was in her hotel room. When the officers explained that they needed her name for their police report, Ms. Rivera provided it but declined to retrieve her identification from her hotel room or provide Officer Day with her date of birth. Officer Day then arrested Ms. Rivera for obstruction, handcuffed her, and placed her in his patrol car. Plaintiff saw her friend's arrest and was concerned for her well-being. After Ms. Rivera's arrest, Plaintiff approached and spoke to the Defendants.

Plaintiff was polite and calm when she spoke to Defendants. and asked about the circumstances leading to the arrest of Ms. Rivera. Plaintiff asked if it was possible for her friend to be released with only a warning or a citation. Day declared that whether Rivera would be simply issued a warning citation depended "on her attitude," and that Rivera had a "bad attitude" and had not identified herself when asked by Officer Day. Officer Day spoke at length with Plaintiff, asking her a number of questions such as where she was from, asking how Ms. Rivera spelled her name, asking where Plaintiff worked, and asking if she was staying in the same motel room as Rivera. Plaintiff answered each of Officer Day's questions.

Officer Day declared that Rivera wanted to "be smart" and not identify herself; that Rivera had to identify herself; and, that he and his fellow officer would not leave until Rivera did so. Ms. Rivera's sister was in the vicinity of the conversation involving Ms. Ceyrolles and Defendants Day and Bryson. She arrived at the location where Day made his statements about Ms. Rivera not identifying herself. Ms. Rivera's sister and Plaintiff spoke to one another in the officer's presence about recovering Ms. Rivera's identification from their room. Ms. Rivera's sister then walked back toward their hotel room to search for Ms. Rivera's identification. Once Ms. Rivera's sister walked away, Plaintiff complained to

Officer Day and Officer Bryson about Rivera's arrest. While speaking, Plaintiff casually used the words "fuck" and "shit."

Plaintiff was calm as she said these words, said the words in a normal conversational tone, and was a number of feet from the officer. When she complained to Defendants about Ms. Rivera's arrest, she did not physically or verbally threaten anyone, including the two officers. Officer Day suddenly became aggressive, and told Plaintiff that she was not allowed to "cuss in public." Plaintiff was surprised by this statement. She asked Officer Day "how is cussing illegal?"

Officer Day declared unequivocally that "cussing in public" is illegal, and told Plaintiff that a City ordinance made it illegal. Plaintiff asked Officer Day how that could be illegal, and asking what about other people swearing – like those who might be coming out of a bar or spectators at a football game. Plaintiff's questions about the basis of Officer Day's claim that it is illegal to use profanity in public angered him.

Plaintiff, still in disbelief that Officer Day insisted it was illegal to use profanity in public, asked whether she was really going to be arrested for saying "fuck" and "shit." Officer Day responded by telling Plaintiff that she had already received a warning and that she was now under arrest. Officer Day removed his handcuffs and grabbed Ceyrolles' arm. Officer Bryson, who was only a few feet away and had heard the entire conversation between Day and Plaintiff, moved in to assist with the arrest. As she was being handcuffed, Plaintiff continued to ask why she was being arrested but she did not physically resist the arrest or any commands by Defendants. After Officer Day handcuffed Plaintiff, he violently slammed her against the side of a nearby patrol car. As Plaintiff stood alongside of the car, with her hands cuffed behind her back, she again asked Officer Day why she was being arrested.

Officer Day responded by unholstering his taser and discharging it into Plaintiff's right thigh. Officer Day's taser was in dart mode. As a result two darts pierced through Plaintiff's pants, into her thigh, and sent a painful electric shot that caused Plaintiff to collapse. At the time Officer Day tased Plaintiff, both of her wrists were cuffed behind her back. Before being tased, Plaintiff did not engage in physical violence, threaten physical violence, nor physically resist the officers.
Plaintiff was taken to a patrol car and transported to the White County Detention Center by Officer Bryson. Plaintiff remained jailed until she was released the next day.

**Defendant:**

On September 20, 2021, Office Michael Day and Officer Graylen Bryson responded to a noise complaint at the River Bend Motel and Cabins, located at 134 River Street in Helen, Georgia. The City received complaints from the employees of the hotel that people in the parking lot were making so much noise that it was bothering other guests.

When the officers arrived on the scene, they encountered Ms. Rivera and a male companion. The officers were in uniform and identified themselves to Ms. Rivera and the male. In furtherance of their investigation, Officer Day asked Ms. Rivera and the male for their identification. Ms. Rivera refused to provide her name or to provide her identification. After some time, she ultimately did provide her name. However, she refused to provide her date of birth or her identification. Ms. Rivera was ultimately detained by Officer Day while they continued with their investigation.

After placing Ms. Rivera in his patrol car, the officers were approached by Plaintiff. During her conversation with the officers, Plaintiff admitted that "I am drunk". She also asked that the officers release Ms. Rivera. When the officers would not comply with her request, Plaintiff became more insistent and belligerent. She continued to talk over the officers, ask them questions and not allow them to answer, and argue with them regarding their jobs. When Plaintiff became unhappy with the officers' responses, she began using profanity in the officers' presence. Officer Day warned Plaintiff that if she continued to cuss that she would be arrested. Despite the warnings, Plaintiff continued to use profanity in the officers' presence.

As a result, Officer Day informed Plaintiff that she was under arrest. As Officer Day tried to cuff Plaintiff, she actively resisted the officer's command and failed to comply with his request. She failed to put her arms behind her back so that Officer Day could cuff her without incident. Officer Day then used reasonable means to gain Plaintiff's compliance with his request.

To gain compliance and while Plaintiff was still actively resisting, Officer Day unholstered his Taser. As Plaintiff continued to struggle, Officer Day intended to "dry stun" Plaintiff with his Taser. When he went to do so, his finger slipped off the "dry stun" button and hit the trigger. When his finger hit the trigger, Officer

Day accidentally discharged the prongs of the Taser into Plaintiff. Within three (3) seconds of discharge, Officer Day shut his Taser off to end the shock that Plaintiff was feeling.

Plaintiff was arrested for public drunkenness. She was held in the White County Detention Center for less than five (5) hours.

    (c)    The legal issues to be tried are as follows:

1. Whether there was probable cause for Plaintiff's arrest;

2. If there was probable cause for Plaintiff's arrest, whether otherwise similarly situated individuals have engaged in the same type of conduct as Plaintiff but are generally not arrested by the City of Helen;

3. Whether the individual defendants are entitled to qualified immunity;

4. Whether the City of Helen has an unconstitutional ordinance, policy, or custom that was the moving force behind the officers' decision to arrest Plaintiff;

5. Whether Defendant City of Helen is entitled to sovereign immunity;

6. Whether Defendants used excessive force by tasing Plaintiff;

7. Whether Plaintiff is entitled to recover damages and, if so, in what amount.

    (d)    The cases listed below (include both style and action number) are:

  (1) Pending Related Cases:  None.

  (2) Previously Adjudicated Related Cases: None.

**2.** This case is complex because it contains one or more of the features listed below (please check):

  \_\_\_\_\_(1) Unusually large number of parties
  \_\_\_\_ (2) Unusually large number of claims or defenses
  \_\_\_\_ (3) Factual issues are exceptionally complex
  \_\_\_\_ (4) Greater than normal volume of evidence
  \_\_\_\_\_(5) Extended discovery period is needed
  \_\_\_\_ (6) Problems locating or preserving evidence
  \_\_\_\_ (7) Pending parallel investigations or action by government
  \_\_\_\_\_(8) Multiple use of experts
  \_\_\_\_ (9) Need for discovery outside United States boundaries
  \_\_\_\_ (10) Existence of highly technical issues and proof
  \_\_\_\_ (11) Unusually complex discovery of electronically stored information

**3.** **Counsel:**

The following individually-named attorneys are hereby designated as lead counsel for the parties:

    **Plaintiff:**  **Jeff Filipovits, Esq.**
          **Wingo F. Smith, Esq.**
          **Spears & Filipovits, LLC**
          **315 W. Ponce de Leon Ave.**
          **Suite. 865**
          **Decatur, GA 30030**

    **Defendant:**  **Austin L. Perry**
          **Taylor S. Howard**
          **McClure, Ramsay & Dickerson, LLP**
          **38 Falls Road**
          **Toccoa, Georgia 30577**

**4.      Jurisdiction:**

Is there any question regarding this Court's jurisdiction?

    ___ Yes                    _X_ No

If "yes," please attach a statement, not to exceed one page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority.

**5.      Parties to This Action:**

(a)     The following persons are necessary parties who have not been joined:

The parties are not presently aware of any such persons.

(b)     The following persons are improperly joined as parties:

None.

(c)     The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:

None.

(d)     The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.

The parties agree to inform the Court should any such contentions become known.

6.  **Amendments to the Pleadings:**

Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed. R. Civ. P. 15. Further instructions regarding amendments are contained in Local Rule 15.

(a) List separately any amendments to the pleadings that the parties anticipate will be necessary:

None anticipated at this time.

(b) Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.

7.  **Filing Times For Motions:**

All motions should be filed as soon as possible. The local rules set specific filing limits for some motions. These times are restated below.

All other motions must be filed WITHIN THIRTY DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later. Local Rule 7.1A(2).

(a) *Motions to Compel*: before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.

(b) *Summary Judgment Motions*: within thirty days after the close of discovery, unless otherwise permitted by court order. Local Rule 56.1.

(c) *Other Limited Motions*: Refer to Local Rules 7.2A, 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

(d)  *Motions Objecting to Expert Testimony*: Daubert motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted. Refer to Local Rule 7.2F.

**8. Initial Disclosures:**

The parties are required to serve initial disclosures in accordance with Fed.R.Civ.P. 26. If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection. NOTE: Your initial disclosures should include electronically stored information. Refer to Fed.R.Civ.P. 26(a)(1)(B).

No party objects to initial disclosures.

**9. Request for Scheduling Conference:**

Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and the position of each party.

The parties do not request a scheduling conference.

**10. Discovery Period:**

The discovery period commences thirty days after the appearance of the first defendant by answer to the complaint. As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.

Cases in this Court are assigned to one of the following three discovery tracks: (a) zero month discovery period, (b) four months discovery period, and (c) eight months discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.

Please state below the subjects on which discovery may be needed:

The parties believe discovery will be needed regarding the allegations and issues raised in Plaintiff's Complaint, Plaintiff's alleged damages, and the defenses asserted in Defendants' Answer. The parties reserve the right to pursue discovery on additional subjects, as necessary, in compliance with the Federal Rules of Civil Procedure.

If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:

**Due to the upcoming holidays and the counsel's litigation schedule, the parties jointly request this Court permit a 6-month discovery period.**

**11.   Discovery Limitation and Discovery of Electronically Stored Information:**

(a)   What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?

The parties agree that discovery material (both requests and responses) may be served via electronic means and that neither party requires service via U.S. mail. The parties agree that they will share an obligation to acknowledge receipt of any emailed discovery by responding to any email that contains discovery requests or responses. The parties further agree that, for any discovery served via electronic

means, three days shall be added to time for any necessary response as set forth in Fed. R. Civ. P. 6(d).

The parties agree that whenever a party receives materials from third parties in response to either an open records act request or a third party subpoena, that such party receiving the materials shall promptly provide a copy of said response to the other party.

(b)   Is any party seeking discovery of electronically stored information?

__X__ Yes   _____ No

If "yes,"

(1)   The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:

The parties will reasonably restrict any request for electronically stored information by date, subject matter, search terms, author, recipient, or the like.

(2)   The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:

The parties may produce electronic information in PDF format. The parties reserve the right to seek electronic information through any additional manner,

including but not limited to the original native and unaltered format which preserves all metadata and other information.

For any data that cannot be exported in PDF or native format, that data should be exported to a CSV or plain text file which preserves all data, unless an alternative format is otherwise agreed to by the parties. For any electronic evidence which requires a proprietary or specialized software, to view or play (e.g., video evidence), the parties agree to produce a copy of that software.

In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.

**12.  Other Orders:**

What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?

None at this time.

**13.  Settlement Potential:**

(a)  Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on August 8, 2022, and that they participated in settlement discussions.  Other persons who participated in the settlement discussions are listed according to party.

| For Plaintiff: | Counsel (signature):<br>*/s/Jeff Filipovits*<br>*/s/Wingo Smith* |
|---|---|
|  | **Other Participants:**  None |

**For Defendant:**               **Counsel (signature):**
                                 */s/Austin Perry*
                                 */s/Taylor Howard*

**Other Participants:** None

(b) All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:

(___) A possibility of settlement before discovery.
(_X_) A possibility of settlement after discovery.
(___) A possibility of settlement, but a conference with the judge is needed.
(___) No possibility of settlement.

(c) Counsel (_X_) do or (___) do not intend to hold additional settlement conferences among themselves prior to the close of discovery. The proposed date of the next settlement conference is (Not applicable).

(d) The following specific problems have created a hindrance to settlement of this case. None.

## 14. Trial by Magistrate Judge:

Note: Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.

(a) The parties (___) do consent to having this case tried before a magistrate judge of this Court. A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the clerk of court this ____ day of _____, 20____.

(b) The parties (_X_) do not consent to having this case tried before a magistrate judge of this Court.

| | |
|---|---|
| **SPEARS & FILIPOVITS, LLC** | **MCCLURE, RAMSAY & DICKERSON, LLP** |
| **Jeff Filipovits**<br>Georgia Bar No. 825553 | **Austin L. Perry**<br>Austin L. Perry<br>Georgia Bar No. 577007<br>alp@mrdelaw.com |
| **Wingo F. Smith**<br>Wingo F. Smith<br>Georgia Bar No. 147896 | **Taylor S. Howard**<br>Taylor S. Howard<br>Georgia Bar No. 849318<br>tsh@mrdelaw.com |
| 315 W. Ponce de Leon Ave., Ste. 865<br>Decatur, GA 30030<br>(404) 905-2225<br>jeff@civil-rights.law<br>wingo@civil-rights.law | 38 Falls Road<br>P. O. Drawer 1408<br>Toccoa, Georgia 30577<br>Phone – (706) 886-3178<br>Fax – (706) 886-1150 |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |

\* \* \* \* \* \* \* \* \* \* \* \*

## SCHEDULING ORDER

Upon review of the information contained in the Joint Preliminary Report and Discovery Plan form completed and filed by the parties, the Court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as herein modified:

_____

_____

_____

_____

_____

_____

IT IS SO ORDERED, this _____ day of _____, 2023

_____
Richard W. Story
UNITED STATES DISTRICT JUDGE